UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
TREVOR VELU,

                         Plaintiff,

      -against-

VELOCITY EXPRESS, INC.,

                         Defendant.

----------------------------------X

MEMORANDUM AND ORDER
06-CV-6531 (JS)(WDW)

APPEARANCES:
For Plaintiff:     Robert James La Reddola, Esq.
                   La Reddola, Lester & Associates, LLP
                   600 Old Country Road, Suite 224
                   Garden City, NY 11530

For Defendants:    J. Brooke Hern, Esq.
                   Averim Stavsky, Esq.
                   Budd Larner PC
                   150 JFK Parkway
                   Short Hills, NJ 07078

                   Richard M DeAgazio, Esq.
                   Edwards Angell Palmer & Dodge LLP
                   One Giralda Farms
                   Madison, NJ 07940

SEYBERT, District Judge:

        Pending before the Court is Defendant's motion and Plaintiff's cross-motion for summary judgment. For the reasons that follow, the Court GRANTS Defendant's motion in part and DENIES Plaintiff's motion in its entirety.

## BACKGROUND[1]

        Velocity Express, Inc. ("Defendant" or "VEI") is an

---

[1] The facts contained herein are taken from the parties' Local Rule 56.1 Statements. The Court notes that Plaintiff only submitted a 56.1 Counter-Statement opposing Hartford's 56.1 Statement, and not one opposing Griffon's.

incorporated business in Delaware, with its principal place of business in Connecticut and conducts business in the State of New York, and provides delivery services for its clients. Since approximately 1998 or 1999, Plaintiff Trevor Velu ("Plaintiff" or "Velu") has performed work for VEI as a delivery driver. Clients contract with VEI to handle their shipping needs, and VEI provides drivers for these clients' deliveries. Plaintiff's duties involve picking up shipments from the offices of Canon USA in Lake Success, New York, and delivering those packages to the offices of Canon USA in Ridgefield Park, New Jersey and in Jamesburg, New Jersey; and also picking up packages from the offices of Canon USA in Ridgefield Park and Jamesburg, New Jersey and delivering those packages to Canon USA's offices in Lake Success, New York. (Def.'s 56.1 Stmt. ¶ 1.)

Under his contract, allegedly entitled "Independent Contractor Agreement for Transportation Services" ("Agreement")[2] and subject to the demands of the clients, Velu is free to make his own schedule, and may work for other delivery companies, but has thus far chosen not to. For example, each day, Velu sets his own schedule and decides which routes he will take to fulfill his

---

[2] The Court qualifies the Agreement title with "allegedly" because, for some reason, the parties have not submitted the document to the Court as part of their applications. The Court finds this odd, as both parties ask the Court to sort out the intricacies of their contractual relationship without providing the document that established the relationship in the first place.

deliveries; in the past, VEI has communicated to him that certain clients have time requirements for their deliveries, and thus, Velu routes his deliveries according to those schedules. For whatever reason, if Velu does not want to fulfill delivery requests, he has the discretion to decline them; in the past, he has exercised that discretion. Velu decides when, where, and how long to break for lunch, and he also decides the duration of his lunch break each day. (Id. ¶¶ 10.) Mr. Velu may make stops for personal reasons. Additionally, Plaintiff need not wear VEI uniforms, and does not wear a VEI hat, shirt, jacket, or clothing of any kind.[3] (Id. ¶¶ 3-5.) Velu's delivery van does not bear VEI signage, and Velu owns, insures, maintains, and services his delivery van without VEI's reimbursement or contribution. (Id. ¶¶ 6-7.) However, VEI requires all of its drivers, including Velu, to provide proof of commercial insurance and occupational accident insurance coverage. If the driver fails to provide proof of insurance, VEI deducts the cost of providing that insurance from any payments it makes to its drivers for deliveries completed.[4] (Pl.'s 56.1 Stmt. ¶¶ 16-19.)

---

[3] In the past, however, Velu may have worn some VEI apparel while making deliveries to one of VEI's clients, Dime Savings Bank. (Pl.'s 56.1 Counter-Stmt. ¶ 23.) He no longer makes these deliveries and, consequently, no longer wears the apparel. According to VEI, and undisputed by Plaintiff, VEI did not require Plaintiff to wear the apparel; instead the client required all delivery personnel to wear apparel indicating their association.

[4] VEI does not require its drivers to have health insurance, nor does it provide it for them. However, if the driver desires,

3

Each day, Velu makes his deliveries without being required to report to VEI. Velu never visits VEI except to pick up his check. (Def.'s 56.1 Stmt. ¶ 8.) Velu has established a direct working relationship with Canon USA employees, and has provided his personal cellular telephone number to between four and nine Canon USA employees; they call Velu directly to arrange for him to pick up and deliver packages. (Id. ¶¶ 12-14.)

Under the Agreement, Velu earns more money if he carries extra boxes on his interstate delivery route. Notwithstanding the foregoing information, from the record so far, the Court has very little information regarding the nature of payments made by VEI to Velu because of his deliveries. On July 5, 2005, VEI issued a memorandum, addressed to its "Independent Contractors" regarding the V-Pay Initiative Update. On February 21, 2008, Defendant issued a separate document entitled "V-Pay 55 Instructions[.]" Both documents provide that Independent Contractors are to be paid 55% commission of actual revenue for all scheduled stops. Hence, Velu must report to VEI at some point after making his deliveries, either by phone or e-mail, though not on a daily basis, indicating the number of deliveries, so that VEI can calculate his payments. (Id. ¶ 15.) Velu does not contact VEI when he receives calls from Canon USA employees arranging for a delivery, but only informs VEI

---

he or she may seek out health insurance through a third-party, and VEI serves as administrator.

after he completes the delivery for payment purposes. (Id. ¶ 16.)

In approximately 2003, Canon USA issued an official identification card to Velu, and Velu has used and continues to use the card to pick up packages and make deliveries to Canon offices. (Id. ¶ 17.) To record each delivery he makes, Velu uses forms provided and required by Canon USA, not VEI. Velu never submits any forms to VEI, and stores copies of the forms in his home. (Id. ¶ 19.) Until several years ago, Velu recorded pick-ups and deliveries using VEI forms, and he returned carbon copies of the form to VEI. At some unspecified point, and for unspecified reasons, Velu made a decision to discontinue using the VEI receipts, and he did so without consulting with or seeking permission from VEI. (Id. ¶ 20.)

Because Velu is not provided with any supplies from VEI, he maintains a computer, printer, and desk at home with which he conducts business. Velu purchased these items without reimbursement, and uses the computer to compose work-related email and other documents. Although Velu pays the expense of highway and bridge tolls and gasoline used in making deliveries for Canon USA, VEI does not reimburse any of these expenses. Instead, Velu keeps records of his gasoline expenses and mileage, and he provides that information to his accountant who prepares his tax returns. (Id. ¶¶ 23-24.) Velu seeks to minimize expenses by considering shorter routes, and testing those routes. (Id. ¶ 26.)

5

On a typical day of work, Velu earns approximately $200 and incurs approximately $45 to $50 in expenses in New York and New Jersey. Velu's earnings are based on the stops he makes in his deliveries for Canon USA at their New York and New Jersey offices. (Id. ¶¶ 25, 27.)

On December 7, 2006, Plaintiff commenced this action alleging six causes of action all surrounding a dispute over the amount he received in payments from VEI. The Complaint alleges violation of the (1) Fair Labor Standards Act, 29 U.S.C. § 206(a), 29 U.S.C. § 207(a)(I); (2) New York Labor Law 592(1), 191(1)(a) and (3); (3) New York Labor §§ 650 et seq.; 12 NYCRR § 142-2.2, 2.4; (4) New York Labor Law 191 (i)(a) and 29 CFR 516.2 and New York Labor Law 195(4) and 12 NYCRR § 137-2.1; and (5) breach of contract. Specifically, Claims One and Two assert that Defendant willfully failed to pay Plaintiff, an employee, overtime and minimum wages under the FSLA and New York Labor Law, respectively. In Plaintiffs Third Claim, he alleges that, as an employee, he was entitled to and did not receive timely payment of wages pursuant to New York Labor Law. Claim Four alleges that Defendant deliberately, knowingly and intentionally, violated New York Labor Law by failing to maintain adequate and written employment records for hours worked and wages earned by Plaintiff in order to facilitate the exploitation of his labor. In Plaintiff's Fifth Claim he argues that, as an independent contractor, he is entitled

to and did not receive all amounts owed to him pursuant to his Independent Contractor Agreements for Transportation Services.[5] Although Defendant concedes that Velu is owed some money, Velu disputes the underpayments based upon his allegation that he is also owed a percentage of a fuel surcharge billed by Defendant to Canon USA and Dime Savings Bank ("Fuel Surcharge"), for whom Plaintiff has made interstate deliveries. Finally, in Plaintiff's Sixth Claim, Velu asserts that through quantum meruit, he is entitled to a percentage of the Fuel Surcharge.

On November 4, 2008, both Defendant and Plaintiff filed motions for summary judgment. For the reasons that follow, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment, and DENIES Plaintiff's motion for summary judgment in its entirety.

DISCUSSION

I. <u>Rule 56 Standard for Granting Summary Judgment</u>

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re</u>

---

[5] In its Memorandum of Law in Support of its motion to dismiss, Defendant concedes that discovery has revealed underpayment to Velu, which began accruing on or about May 2, 2005. According to the 56.1 Statements submitted by both parties, this amount totals $33,546.36. (Pl.'s 56.1 Stmt ¶ 39, Exhibit 7, VELO 1850.)

Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. But while the moving party bears the initial burden, "once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.

II. Plaintiff's Status as Employee or Independent Contractor Under the FLSA

A. FLSA Standard

Under the FLSA, the question of whether an employee-employer relationship exists is one of "economic reality."

Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) (citing United States v. Silk, 331 U.S. 704, 713, 67 S. Ct. 1463, 91 L. Ed. 1757 (1947); Rutherford Food Corp., 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L. Ed. 1772); Bartels v. Birmingham, 332 U.S. 126, 130, 67 S. Ct. 1547, 91 L. Ed. 1947 (1947). Courts generally determine the "economic reality" of a particular situation, to distinguish employees from independent contractors, by applying a five-part test drawn from factors articulated by the Supreme Court in Silk, 331 U.S. at 716. See Brock v. Superior Care Inc., 840 F.2d 1054, 1058 (2d Cir. 1988). Specifically, courts have considered:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Godoy v. Restaurant Opportunity Ctr. of N.Y., Inc., 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009). But these factors are not exclusive. Rather, the economic reality of a relationship depends upon the entirety of the circumstances. Rutherford Food Corp., 331 U.S. at 730; Superior Care, 840 F.2d at 1059 (holding that mechanical application of the test is to be avoided); Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 141-42 (2d Cir. 2008) (A worker's status as an employee or independent contractor

9

under the FLSA is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances . . . .").

In addition to the enumerated Silk factors above, the Second Circuit has identified and applied different sets of factors based upon the unique facts of other individual cases. See Barfield, 537 F.3d at 143 ("[T]he various factors relied upon by this court . . . state no rigid rule for the identification of an FLSA employer. To the contrary . . . they provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.") (internal citations omitted); Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003) (expanding upon the factors established in Carter v. Dutchess Cmty. C., 735 F.2d 8, 12 (2d Cir. 1984), and applying a six-factor test for employment based on "functional," rather than formal, control: "(1) whether [defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the [putative joint employers] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the defendant]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes;

(5) the degree to which the [defendant] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the defendant].").

Regardless of what factors the court chooses to consider, based on the individual facts of the case, the ultimate question is whether the putative employee is economically dependent on the putative employer. In other words, the court must determine "'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" Godoy, 615 F. Supp. 2d at 192-93 (citing Superior Care, 840 F.2d at 1059).

B. New York State Labor Law Standard

Although slightly different than the FLSA inquiry, the standard for determining a worker's status as an employee or independent contractor under New York State Labor Law is similar, and accounts for some of the same factors. Instead of focusing on the economic reality of the situation, New York law focuses on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results. Bynog v. Cipriani Group. Inc., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003); Under New York Labor Law, the factors relevant to assessing control include whether the worker "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll[,] and

11

(5) was on a fixed schedule . . . ." Id. at 198-99; see also Bhanti v. Brookhaven Memorial Hosp. Med. Ctr., Inc., 260 A.D.2d 334, 687 N.Y.S.2d 667 (App. Div. 1999).

C. Plaintiff is an Independent Contractor Under the FLSA and New York Labor Law

In this case, the relevant factors under the FLSA demonstrates as follows:

a. Plaintiff uses his own equipment for work, and only visits Defendant's premises when he must be paid;
b. Plaintiff's work is an integral part of Defendant's business model, but his work is interchangeable with the work of other drivers; when he refuses work, other drivers fill in.
c. Defendant nor its agents supervise Plaintiff's work, except to account for payments it owed to Plaintiff.
d. Plaintiff may work for other companies while continuing his relationship with VEI. In the past several years, Plaintiff has not chosen to avail himself to the opportunity to work for other shipping companies, but that is by choice.
e. Plaintiff has a great deal of control over his own work and work schedule, subject to the demands of clients.
f. Clients contact Plaintiff directly when they require his services, and Plaintiff only contacts VEI after-the-fact so as to facilitate his payment.
g. Defendant does not require Plaintiff to wear VEI apparel, and any past requirement that he wear special apparel came from clients, not VEI.
h. Plaintiff's equipment in no way indicates that he is associated with VEI.
i. Defendant does not provide Plaintiff with any type of benefits, whatsoever, except to serve as facilitator for certain insurances. In all cases, the drivers may obtain the insurance privately.

Regardless of what factors the Court chooses to consider, as the Godoy court noted, the ultimate question is "whether as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business

12

for [himself]." 615 F. Supp. 2d at 192-93 (internal citations omitted). In this case, if either party were to terminate the Agreement today, Plaintiff could go out the next day with the same van, clothes, equipment, computer, printer, and other supplies, and immediately work for another shipping company. Accordingly, the Court finds that Plaintiff is in business for himself and is an independent contractor for purposes of the FLSA. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's FLSA claim.

When considering Plaintiff's claim under New York Labor Law, the Court switches focus slightly to Defendant's degree of control. Nevertheless, under this other standard, the factors relevant to assessing Defendant's and Plaintiff's relationship still weigh in favor of the Defendant:

   a.  Plaintiff worked at his own convenience, subject to the demands of the clients. When he wanted to decline work, he did.
   b.  Plaintiff was free to engage in other employment, but chose not to.
   c.  Defendant did not provide Plaintiff with fringe benefits of any kind.
   d.  Plaintiff was not on the VEI's payroll; and
   e.  Defendant did not mandate a fixed schedule for Plaintiff. Rather, at certain points in the relationship, Defendant informed Plaintiff of the clients' requirements. From that point forward, Plaintiff communicated directly, and almost exclusively, with the clients to determine his schedule. If at any point Plaintiff did not want to conduct deliveries, he could (and did) refuse them. At that point, VEI would send a different driver to fulfill the client's needs.

Based on the above-mentioned factors, the Court finds that

Plaintiff had significant control over his own job and daily schedule. So long as Plaintiff kept the clients happy, he was provided with significant discretion about how to conduct his work, and it appears that VEI rarely interfered in any way.

Accordingly, the Court finds that Plaintiff was an independent contractor under New York Labor Law. Thus, the Court grants summary judgment in favor of Defendant on Plaintiff's Second, Third, and Fourth Claims.

III. <u>Breach of Contract and Quantum Meruit</u>

    A.   <u>Breach of Contract</u>

Plaintiff mixes his Fifth Claim into some sort of hybrid breach of contract--under the theory that he is an independent contractor--and failure of the Defendant to pay his wages. As a general matter, parties may plead causes of action under alternative theories. But here, the Court notes that Plaintiff was and is not an employee under the FLSA or New York Labor Law. Accordingly, Plaintiff may only sustain his cause of action for breach of contract, and may only succeed on this motion for summary judgment if he can demonstrate no disputed material fact exists.

As the Court stated earlier, the parties seek to have the Court flush out the intricacies of their contractual relationship without providing the Court with the Agreement governing that relationship. Based on what the Court has before it, however, Plaintiff has both helped and hurt himself; he has demonstrated the

14

existence of a disputed material fact sufficient to withstand Defendant's motion for summary judgment, but in doing so, he has defeated his own summary judgment motion.  Although it is clear from the record thus far that Plaintiff was indeed an independent contractor, the terms of his payment are not so clear.  According to the documents entitled "V-Pay Initiative" and "V-Pay 55 Instructions[,]" a driver's payments are to be calculated based on 55% of VEI's net revenue from scheduled services.  However, the initiatives leave out a definition of net revenue.  In other words, based on the parties' submissions, the fuel surcharge may or may not be included in the net revenue.  Whether the parties intended the inclusion of this surcharge is a disputed material issue of fact; therefore, granting summary judgment on this issue would be inappropriate.

Accordingly, Defendant's motion for summary judgment on this issue is DENIED.  Similarly, Plaintiff's motion for summary judgment on this issue is DENIED.

B. <u>Quantum Meruit</u>

Under New York law, a court "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 175 (2d Cir. 2005) (<u>citing</u> <u>Newman & Schwartz v. Asplundh Tree Expert Co., Inc.</u>, 102 F.3d 660, 663 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 768 F.

Supp. 89, 96 (S.D.N.Y. 1991) (finding that "quantum meruit and unjust enrichment are not separate causes of action," and that "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract"), rev'd on other grounds, 959 F.2d 425 (2d Cir. 1992)).

To recover under quantum meruit in New York, "a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000); see Argo Marine Systems, Inc. v. Camar Corp., 755 F.2d 1006, 1011 (2d Cir. 1985) ("In order to establish a right to compensation under a theory of quantum meruit or quasi-contract, one must establish that he had a reasonable expectancy of receiving such compensation."). But, "where a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available." New Windsor Volunteer Ambulance Corps., Inc v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006).

In this case, neither party disputes the validity of the agreement entered into between the parties. Accordingly, the Court GRANTS summary judgment in favor of Defendant on Plaintiff's Sixth

Claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment. Plaintiff's First, Second, Third, Fourth, and Sixth Claims are hereby DISMISSED with prejudice. The Court also DENIES Plaintiff's motion for summary judgment with regard to his Fifth Claim.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  September 30, 2009
        Central Islip, New York